# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LALEE GERATY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 06-cv-0815 |
| ) | |
| NORTHEAST ILLINOIS REGIONAL ) | Judge Robert M. Dow, Jr. |
| COMMUTER RAILROAD ) | |
| CORPORATION d/b/a METRA, et al. ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Metra's motion for summary judgment [129]. For the reasons set forth below, that motion is denied.

### I.    Procedural Background

Plaintiff, Lalee Geraty ("Geraty"), filed her complaint [1] on February 13, 2006, alleging that Defendant, Northeast Illinois Regional Commuter Railroad d/b/a Metra ("Metra"), is liable for injuries suffered by Plaintiff. Metra's alleged liability rests on certain acts and omissions by Metra that Geraty contends caused her to sustain an injury at Metra's downtown Chicago Millennium Station; the font of authority for imposing that liability is the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. Metra's answer [9] generally denies that it is liable for Geraty's injury and asserts three affirmative defenses. Metra also filed a complaint [35] against a handful of third-party defendants (of whom two remain), seeking contribution for Geraty's damages in the event Metra is ultimately found liable. Metra filed a motion for summary judgment [129] with respect to Plaintiff's FELA claim. In its summary judgment motion, Metra argues that (i) Geraty is not covered under FELA because the duties of her job

were not "in furtherance of interstate commerce at the time of the" accident and that (ii) Plaintiff cannot establish Metra's negligence because she cannot show that Metra had "actual or constructive notice of the allegedly dangerous condition" that caused Plaintiff's injury. Def. Mot. Summ. J. ¶¶ 2, 3.

## II.   Relevant Facts

The Court takes the relevant facts from the parties' respective Local Rule ("L.R.") 56.1 statements of material fact: Defendant's Statement of Facts ("Def. SOF") [132], Plaintiff's Response to Defendant's Statement of Facts ("Pl. Resp. Def. SOF") [170], Plaintiff's Statement of Additional Facts ("Pl. SOAF") [170], and Defendant's Amended Response to Plaintiff's Statement of Additional Facts ("Def. Resp. Pl. SOAF") [200].[1]

Metra is the service mark of the Northeast Illinois Regional Commuter Railroad Corporation. Pl. Resp. Def. SOF ¶ 2. Millennium Station, also known as Randolph Street Station, is one of the endpoints of Metra's Electric Line, which provides service to University Park in Chicago's South side (and to two other points, both in Illinois). See [170], Ex. 6. Metra's are not the only trains to use Millennium Station, however; South Shore Line trains also use the station on tracks owned by Metra. Def. Resp. Pl. SOAF ¶¶ 6, 9. (The South Shore Line

---

[1] L.R. 56.1 requires that statements of fact contain allegations of material fact, and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at 583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See, e.g., *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider the statement. See, e.g., *Malec*, 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec*, 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, e.g., *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317).

is owned by Northern Indiana Commuter Transportation District ("South Shore").) Def. Resp. Pl. SOAF ¶¶ 2, 6. The South Shore trains run between Indiana and Millennium Station pursuant to a trackage agreement whereby South Shore pays to use Metra's tracks, stop at certain of Metra's platforms, and use Metra's electricity. *Id*.

Plaintiff was a Metra police officer who, at the time of her accident, had been in her then-current assignment as a patrol officer for about two years. Pl. Resp. Def. SOF ¶¶ 7, 8. (She had been employed by Metra since 1993 (see *id.*).) Among Plaintiff's duties as a patrol officer were "assisting Metra patrons, respond[ing] to commuter issues, patrolling the Randolph station, removing homeless individuals from the station, and making necessary arrests." Pl. Resp. Def. SOF ¶ 10. Her responsibilities carried over to travelers using the South Shore Line, and Plaintiff patrolled platforms used by South Shore trains. Def. Resp. Pl. SOAF ¶ 10. Moreover, although Plaintiff's duties were performed entirely within Illinois (Pl. Resp. Def. SOF ¶¶ 11-12), those duties included patrolling tracks that were used by both Metra and the South Shore line, in order to provide track security and "keep an eye out for trespassers." Def. Resp. Pl. SOAF ¶ 13. The patrols, which extended south to 115th Street, redounded to the benefit of South Shore Line trains as well as Metra's trains. Def. Resp. Pl. SOAF ¶¶ 12, 13.

The accident that gave rise to the instant legal dispute occurred on the morning of Wednesday, June 29, 2005. Pl. Resp. Def. SOF ¶ 15. Roughly one week prior, a leak appeared in the ceiling of the police office at Millennium Station. Pl. Resp. Def. SOF ¶¶ 18, 19. Michael McCray, an engineering supervisor for Metra, became aware of the leak at that time; he contacted security at the Prudential Building, the apparent source of the leak. Def. Resp. Pl. SOAF ¶ 18. Several people ultimately responded to the scene of the leak in Metra's police office, including staff of the Prudential Building's engineering company, Able Engineering;

Michael McCray; and a representative of a former third-party defendant. Woulfe Dep. at 19-20. Someone in the group – possibly one of the workers for Able Engineering[2] – hung plastic sheeting from the ceiling of the Metra Police office, in order to channel water into a garbage can. Pl. Resp. Def. SOF ¶ 20; Def. Resp. Pl. SOAF ¶ 19. According to McCray, "[A] huge amount of plastic * * * [was] connect[ed] to the ceiling." McCray Dep. at 22.

Michael McCray knew that the police officers would have to traverse the entire room in which the plastic was draped. Def. Resp. Pl. SOAF ¶ 32. And although McCray visited the police office the day after the plastic was put in place, he did not return until after Plaintiff's accident. Def. Resp. Pl. SOAF ¶ 36. McCray stated in his deposition that the matter "completely slipped [his] mind." Def. Resp. Pl. SOAF ¶ 37.

At some point (perhaps the morning of the accident (see Pl. Resp. Def. SOF ¶¶ 31-32)), and somehow, the plastic sheeting found its way "out of the garbage [can] and on the floor" (Pl. Resp. Def. SOF ¶ 21). As Plaintiff approached a cabinet in the office, she slowed down and stepped onto the plastic sheeting. Her first step "felt secure" (Pl. Dep. at 95-96) and was taken without incident (Pl. Resp. Def. SOF ¶ 27). Her second step, however, proved less successful: her foot got tangled in the plastic sheeting and she fell. Pl. Resp. Def. SOF ¶¶ 25-28.

### III. Standards on Summary Judgment

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

---

[2] See Gutierrez Dep. at 22-23.

4

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**IV. Analysis**

**A. FELA**

Congress enacted the Federal Employer's Liability Act (45 U.S.C. § 51, *et seq.*) in 1908. In general, the FELA statute "shifted part of the human overhead of doing business from" railroad common carrier employees to their employers. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (internal quotation marks and citations omitted). The Act provides:

> Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier.

> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate of foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce * * * shall * * * be considered as entitled to the benefits of this chapter.

45 U.S.C. § 51. Notably, the second paragraph was added in 1939, in response to judicial interpretations that had limited the reach of the Act. *Reed v. Pa. R.R. Co.*, 351 U.S. 502, 504 (1956); *Edwards v. Balt. & O.R. Co.*, 131 F.2d 366, 369 (7th Cir. 1942) (explaining that the 1939 amendment was meant to ease the "difficulty in ascertaining when the work of an employee was part of interstate commerce").[3] The Act has been liberally construed in order to further Congress's remedial purposes. *Gottshall*, 512 U.S. at 543.

FELA's liberal construction is not without limits, however. In order to maintain her case, Plaintiff must show the existence of a triable issue of fact as to the common law negligence elements of duty, breach, foreseeability, and causation. *Fulk v. Ill. Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir. 1994). Although the common law standard has been relaxed with respect to causation, the other elements must be established under unmodified common law standards. *Coffey v. Northeast Illinois Reg'l Commuter R.R. Corp.*, 479 F.3d 472, 476 (7th Cir. 2007). And a "FELA Plaintiff who fails to produce even the slightest evidence of negligence will lose at summary judgment." *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1061-62 (7th Cir. 1998).

Metra makes two principal arguments in its summary judgment motion. First, Metra contends that Geraty is not an employee covered by FELA because she "was not performing duties in furtherance of interstate commerce at the time" of the accident. Def. Mot. Summ. J. ¶ 2. Second, Metra submits that Plaintiff cannot make out a valid FELA claim because "Plaintiff

---
[3] Among FELA's other noteworthy features are that its protections are not waivable by contract and that it prevents railroads from asserting various defenses that could bar recovery, such as assumption of risk and contributory negligence. See 45 U.S.C. §§ 53-55; *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 813 (7th Cir. 1985) (discussing the "main purpose" of the FELA).

6

cannot establish * * * that the defendant had actual or constructive notice of the allegedly dangerous condition." *Id.* at ¶ 3. The Court considers, and ultimately rejects, each argument in turn.

### B. Defendant Has Failed to Establish that Plaintiff's Duties Do Not Further Interstate Commerce

Metra's first argument is that Plaintiff is not an employee for FELA purposes because her duties do not further interstate commerce. Under the Act, coverage extends to an employee of a railroad carrier (i) if any part of the employee's duties "shall be the furtherance of interstate or foreign commerce," or (ii) if any part of the employee's duties "in any way directly or closely and substantially, affect[s] such commerce." 45 U.S.C. § 51; *Reed*, 351 U.S. at 505 (construing the "any part" language in Section 51 as applying to both "furtherance" and "substantially[] affect[s]"). Defendant, addressing only the first basis for FELA coverage, argues that Plaintiff cannot make out a FELA claim because Plaintiff "was not performing duties in furtherance of interstate commerce at the time of" the accident.[4] Def. Mot. Summ. J. ¶ 2.

Specifically, Metra argues that Plaintiff's duties do not further interstate commerce because (i) Plaintiff's duties "do not include the physical operation of the railroad;" (ii) Plaintiff "admitted that her duties as a patrol officer do not affect the running of the Metra's trains;" and (iii) Plaintiff's "patrol vicinity was confined to the territorial boundaries of Illinois." Def. Mem. of Law at 10. None of these arguments is well taken.[5]

---

[4] Metra's memorandum of law in support of its motion for summary judgment only hints at the second basis for FELA coverage and does so only once. See Def. Mot. Summ. J. at 10 ("Plaintiff's duties as a patrol officer * * * cannot be regarded as in aid of commerce.").

[5] Further it is important to note, as a threshold matter, that whether an employee falls under FELA centers on the *duties* of the employee, not the conduct in which the employee was engaged at the moment of the injury. An employee is covered under FELA if "any part" of those duties furthers interstate commerce or "directly or closely and substantially" affects interstate commerce. *S. Pac. Co. v. Gileo*, 351 U.S. 493,

Metra's first argument – that Plaintiff's duties do not include the physical operation of the railroad – is foreclosed by the Supreme Court's decision in *Reed*. That decision makes clear, both in its facts and in the Court's extensive discussion, that an employee does not have to be involved in the physical operation of a railroad in order to bring a FELA claim. In *Reed*, a clerical worker was injured by a cracked windowpane that gave way and "blew in upon her;" the Court held that her duties as a clerk brought her within FELA's ambit. 351 U.S. at 503. In reaching its decision, the Court explained: "Under the [1939] amendment, it is the 'duties' of the employee that must further or affect commerce, and it is enough if 'any part' of those duties has the requisite effect." *Id.* at 506. "The benefits of the Act are not limited to those who have cinders in their hair, soot on their faces, or callouses [sic] on their hands." *Id.*

In *Reed*, the clerical employee fell within the statute because "tracings" were filed with the employee that, in turn, were used to create blueprints of engines, cars, tracks, and the like. When an order for blueprints came in, she "secur[ed]" the right tracings, took them "to the blueprint maker in the same office building," and then "return[ed] the original tracings to the appropriate file." *Id.* at 503. Plainly, exposure to soot was not part of the plaintiff's daily regimen. Yet, the Court ruled that the plaintiff's work "comprise[d] a direct link in the maintenance of [the railroad's] lines and rolling stock." *Id.*; see also *Edwards*, 131 F.2d at 369 ("Congress's intent to include any employee who performs services which in any way further or affect interstate commerce is clear.").

Cases subsequent to *Reed* likewise demonstrate that the word *furtherance* "is a comprehensive term * * * [that] is both large and elastic." *Reed*, 351 U.S. at 507 (quoting *Shelton v. Thomson*, 148 F.2d 1, 3 (7th Cir. 1945)). Most similar to the facts of the instant case,

---

497-99 (1956); 45 U.S.C. § 51. In other words, Plaintiff does not have to have been *performing* interstate duties at the time of her injury; such duties just have to have been part of her job description.

8

the Second Circuit in *Greene v. Long Island R.R. Co.*, held that there was "no question" that police officers whose duties consisted of monitoring parking lots acted "in furtherance" of a "railroad business within the meaning of FELA." 280 F.3d 224, 239 (2d Cir. 2002). The Court reasoned that commuters "require safe places in which to leave their cars, and the presence of such police officers is meant to provide both security and reassurance."[6] *Id.* See also *Rostocki v. Consol. Rail Corp.*, 19 F.3d 104 (2d Cir. 1994) (rail car inspector's duties further interstate commerce). Indeed, although the interstate commerce nexus rarely comes in to play during litigation, myriad FELA cases have been brought by employees who did not physically operate the railroad – and Metra has been a party to more than one such case. See, *e.g.*, *Kossman v. Northeast Illinois Reg'l Commuter R.R. Corp.*, 211 F.3d 1031, 1034 & n. 3 (7th Cir. 2000) ("extra clerk" whose duties included, *inter alia*, assisting passengers through the gates, providing train information, and unloading delivery trucks); *Schneider v. Nat'l R.R. Passenger Corp.*, 854 F.2d 14, 18 (2d Cir. 1988) (ticket agent); *Nichols v. Northeast Illinois Reg'l Commuter R.R. Corp.*, 1999 WL 495131, at *1 (N.D. Ill. July 1, 1999) (janitor); *Bock v. Nat'l R.R. Passenger Corp.*, 1989 WL 65036, at *2 (N.D. Ill. 1989) (machinist). And although Defendant argues that *Holl v. S. Pac. Co.*, 71 F. Supp. 21 (N.D. Cal. 1947), supports its arguments, Plaintiff correctly points out that the court in that case reasoned that a "guard at a terminal" "was performing a function connected directly with, or which affected, interstate commerce" (*id.* at 24). Physical operation of the railroad may be useful in establishing a plaintiff's affect on interstate commerce, but it simply is not the lodestar for courts to follow.

---

[6] Even prior to the 1939 amendment, there were numerous reported cases in which the duties of security providers were determined to have been in furtherance of interstate commerce. See, *e.g.*, *Atchison, T. & S.F. Ry. Co. v. Indus. Accident Comm'n*, 220 P. 342, 343-44 (Cal. 1924) (guard whose duties covered both intrastate and interstate freight trains); *Fitzgerald v. Great N. Ry. Co.*, 196 N.W. 657, 658 (Minn. 1923) (night watchman protecting interstate and intrastate freight); *Cork v. Lehigh Valley R. Co.*, 119 A. 88, 89 (N.J. 1922) (watchman safeguarding interstate consignment).

Defendant's second argument, that Plaintiff admitted that her duties do not affect the running of the Metra's trains, likewise does little to advance its cause. During Plaintiff's deposition, Defendant's counsel loosely invoked some of the pertinent language in 45 U.S.C. § 51, asking: "Do you believe that your duties as a Metra police officer substantially and closely affect how the railroad operates?" Pl. Dep. at 57. Plaintiff was clearly (and understandably) confused by this question. After stating her confusion, Plaintiff did state "I mean a police officer doesn't affect the running of the trains," but she continued to grapple with the question, repeating that she did not understand the question. *Id.* at 57-58. That ambiguous "admission," sandwiched in between expressions of uncertainty, is entitled to little weight.

The question that counsel asked had other flaws as well. For starters it left out key language from the statute – "in *any* way" – that might have led Plaintiff to give a different answer. The question also failed to speak to Defendant's arguments on summary judgment: Defendant's summary judgment motion rests on the argument that Plaintiff's duties were not "in furtherance of interstate commerce." Def. Mot. Summ. J. ¶ 2. Yet, counsel asked about the *second* basis of FELA coverage – employees whose duties in any way "directly or closely and substantially, affect such commerce." See 45 U.S.C. § 51.

Finally, and most importantly, whether an individual is an employee for purposes of FELA is a legal determination that depends on the resolution of underlying factual questions. See *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991). Therefore, while Plaintiff's statement (including her doubtful understanding of the question) may bear on the analysis to some degree, it does little work. See also *Felton v. S.E. Pa. Transp. Auth.*, 952 F.2d 59, 66 (3d Cir. 1992) (according little weight to the self-description of one of the parties in an action brought under FELA).

Defendant's third argument, that Plaintiff's "patrol vicinity" was confined to Illinois, suffers from a weakness similar to that of its first argument. Just as Defendant's first argument failed to appreciate that coverage under FELA does not turn on physical operation of the railroad, its third argument fails to appreciate that coverage for an employee under FELA does not depend on that employee crossing state lines. Section 51, Title 45 of the United States Code, provides that an employee falls within the Act's ambit if either (i) any part of the employee's duties furthers interstate or foreign commerce or (ii) any pat of the employee's duties "in any way directly or closely and substantially affect" interstate or foreign commerce. *Reed*, 351 U.S. at 506 ("Under the amendment, it is the 'duties' of the employee that must further or affect commerce, and it is enough if 'any part' of those duties has the requisite effect"). It is hornbook constitutional law that one need not travel across state boundaries in order to affect interstate commerce (see, *e.g.*, *Wickard v. Filburn*, 317 U.S. 111, 128-29 (1942)), and nothing in the FELA statute requires otherwise.

Plaintiff, on the other hand, points to several aspects of her former job's duties that furthered interstate commerce. Her duties included assisting patrons, responding to consumer issues, making arrests, and patrolling a span of tracks that Metra made available to certain interstate trains. Def. SOF ¶ 10; Def. Resp. Pl. SOAF ¶13. Indeed, Plaintiff's duties were far more extensive than those of the police officer at issue in *Greene*, the Second Circuit case involving an officer who patrolled a parking lot. Just as commuters would be reticent to use the rails if they feared for the safety of their autos (280 F.3d at 239), it is equally if not more so the case that would-be passengers would be reticent to travel the rails if there were no police force patrolling the tracks. Ensuring the security of Metra's tracks, which includes "prevent[ing] and deter[ring] vandalism on the tracks that might affect the operation of the trains" (Def. Resp. Pl.

11

SOAF ¶ 13) necessarily facilitates interstate commerce, particularly in light of the trackage agreement that Metra has with the South Shore Line. Similarly, Plaintiff's duties included "respond[ing] to and investigat[ing] grade crossing collisions, or anything else on the rails that might delay the trains." Def. Resp. Pl. SOAF ¶ 14. Defendant makes no argument as to why these duties fail to pass FELA muster.

In sum, the evidence shows that Plaintiff's duties did further interstate commerce, bringing her within the Act's coverage and making summary judgment for Defendant on that basis unavailable.

### C. Defendant Has Failed to Establish that it Lacked Notice

Defendant also fails to establish as a matter of law that it lacked actual or constructive notice of the condition that allegedly caused Plaintiff's injury. In order to bring a successful FELA claim, Geraty must establish "the common law elements of negligence, including duty, breach, foreseeability, and causation." *Williams v. Nat'l R.R. Passenger Corp.*, 161 F.3d 1059, 1062 (7th Cir. 1998). FELA itself imposes a duty on railroads to provide a safe workplace. *McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 300 (7th Cir. 1996). To establish that the duty to provide a safe workplace has been breached, however, a plaintiff "must show circumstances which a reasonable person would foresee as creating a potential for harm." *Id.*; *Gallick v. Balt. & Ohio R.R. Co*., 372 U.S. 108, 117 (1963) ("Reasonable foreseeability of harm is an essential ingredient of Federal Employer's Liability Act negligence."). A trier of fact could rule in favor of Plaintiff if it concludes that there was a dangerous condition that Metra knew about and then connects that condition to Plaintiff's injury. *Holbrook v. Norfolk & S. Ry. Co.*, 414 F.3d 739 (7th Cir. 2005).

Defendant seeks summary judgment on the issue of foreseeability: in particular, Defendant argues that it did not have actual or constructive notice prior to the accident that the plastic sheeting on which Plaintiff slipped had fallen out of the garbage can (into which it had been placed a week earlier) and onto the floor. Def. Mem. of Law at 12; *cf. Williams*, 161 F.3d at 1062 (explaining that most courts equate foreseeability with actual or constructive notice). As evidence, Defendant relies on the fact that neither Plaintiff (Def. SOF ¶ 22), nor Michael McCray (Def. SOF ¶ 32), nor other employees (Def. SOF ¶¶ 30, 31), recall seeing the plastic out of the garbage can "until the moment before the incident." See also Def. Mem. of Law at 12.

The crux of the flaw with Defendant's argument, however, is that it views in an overly narrow way the nature of the "circumstances which a reasonable person would foresee as creating a potential for harm." *McGinn*, 102 F.3d at 300. Put simply, a defendant "has a duty to act reasonably given not only the existing conditions, but the *anticipated* ones as well." *McDonald v. Northeast Illinois Reg'l*, 249 F. Supp. 2d 1051, 1055 (N.D. Ill. 2003) (emphasis added) (triable issue where jury could find Metra failed to anticipate, and take precautions against, snow conditions that greeted its workers); see also *Barrett v. Toledo, P. & W. R. Co.*, 334 F.2d 803, 804 (7th Cir. 1964). In other words, a trier of fact could find that the critical event for purposes of establishing the element of foreseeability did not occur when the plastic fell out of the garbage can, but rather when the plastic was draped from the ceiling in the first place. The facts show that the plastic was draped about a week prior to the accident, that McCray, Metra's engineering supervisor, knew about the "huge amount of plastic" hung from the ceiling (McCray Dep. at 22), and that the plastic "completely slipped [his] mind" until after Plaintiff was injured (Def. Resp. Pl. SOAF ¶ 37). The facts do not establish that the plastic was installed in such a way that its movement into a potentially hazardous position was unforeseeable.

The Supreme Court's decision in *Gallick* illustrates the point that the notice analysis, and hence foreseeability, does not turn on whether defendant knew precisely what aspects of a potentially dangerous condition could cause harm. In *Gallick*, the plaintiff railroad worker was bitten by an insect near a pool of stagnant water where he was working, the wound then became infected, and the plaintiff's legs ultimately had to be amputated. 372 U.S. at 109. The defendant railroad was aware that there was a pool of stagnant water near the roadbed where the plaintiff worked, and therefore, the Court held, it was reasonably foreseeable that someone could suffer an injury. 372 U.S. at 117-18. It was not necessary that the defendant have notice that there were infection-inducing insects on the loose – it just had to know about the fetid pool. See also *Webb v. Ill. Cent. R.R. Co.*, 352 U.S. 512 (1957) (triable issue where defendant was injured on a large "clinker" in a roadbed, defendant had put down 15 cubic yards of cinder three weeks earlier, and there was evidence that no inspection had been made).

More recent cases, too, demonstrate the principle that a "'defendant's duties are measured * * * by what in the light of the facts then known, should or could reasonably have been anticipated.'" *Gallick*, 372 U.S. at 118 (quoting with apparent approval the jury instructions in the underlying trial). For example, in *Coffey* the Seventh Circuit upheld judgment in favor of Metra where a railroad engineer failed to make out a *prima facie* case of negligence after having bumped his head on a sun visor while entering a darkened train. The sun visor, the plaintiff alleged, had loose bolts, which caused the visor to "descend halfway so that it was pointing at the driver's head." 479 F.3d at 475. After noting that the case was "chiefly remarkable for the lack of investigation by the plaintiff's lawyer" (*id.* at 474), the opinion took pains to point out that the case might have turned out differently with a little more lawyerly elbow grease. Had the lawyer, for instance, showed that the weight of the visor was considerable and that there was no padding

14

on it, then the railroad would have had "reason to anticipate that bumping one's head on it would cause an injury and that therefore precautions should be taken to make sure the visor is never in the horizontal position." *Id.* at 477.  Just as "danger invites rescue" (*Wagner v. Int'l Ry. Co.*, 133 N.E. 437, 437 (N.Y. 1921) (Cardozo, J.)), hazards invite precautions.  See also *Williams v. Northeast Illinois Reg'l Commuter R.R.*, 2002 WL 1433724, at *6 (N.D. Ill. June 28, 2002) (plaintiff was not required to offer evidence that Metra had actual notice of the danger alleged to have caused injury); *Kleeberg v. Norfolk S. Ry. Co.*, 2001 WL 914460, at *3 (N.D. Ill. Aug. 13, 2001) (jury could find foreseeability where railroad took no steps to prevent parked trailers from extending over tracks); *Nichols v. Northeast Illinois Reg'l Commuter R.R. Corp.*, 1999 WL 495131, at *2 (N.D. Ill. July 1, 1999) (jury could find foreseeability where plaintiff fell on stray ballast although Metra had no actual notice of the condition).

To be sure, when a defect is hidden from view, the potential for harm is less foreseeable. See *Kaminski*, 200 F.2d at 4.  But when the circumstances that create the potential for harm are in plain view (see *Gadsden v. Port Authority Trans-Hudson Corp.*, 140 F.3d 207, 209 (7th Cir. 1998)), foreseeability is more easily established.  The facts of this case, as framed by the case law on foreseeability and the current state of the record, would allow a trier of fact to conclude that the draped plastic, funneled into the garbage can, and left in plain view for roughly one week, was no hidden defect; that is, a trier of fact could reasonably conclude that Metra had notice of the dangerous condition that caused Plaintiff's injury.

## V.  Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [129] is denied.

Dated:  March 16, 2009

_____
Robert M. Dow, Jr.
United States District Judge