# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LALEE GERATY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 06-cv-815 |
| ) | |
| NORTHEAST ILLINOIS REGIONAL , ) | Judge Robert M. Dow, Jr. |
| COMMUTER CORP. d/b/a METRA, ) | |
| ) | |
| Defendant/Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ABLE ACQUISITION CORPORATION d/b/a ) | |
| ABLE ENGINEERING SERVICES, et al., ) | |
| ) | |
| Third-Party Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Third-Party Defendant, Able Acquisition Services d/b/a Able Engineering Services' ("Able Engineering") motion for summary judgment [213]. For the reasons set forth below, the motion for summary judgment is denied.

**I.    Background**

Plaintiff, Lalee Geraty ("Geraty"), filed this lawsuit in 2006, naming as the sole Defendant, Northeast Illinois Regional Commuter Railroad d/b/a Metra ("Metra"). Geraty seeks to recover under "FELA," the Federal Employers Liability Act, for injuries that she allegedly sustained within Metra's downtown, underground Chicago Millennium Station. Geraty contends that Metra was negligent in the steps that it took following the discovery of a leak in the ceiling at the station. In response to the leak, plastic sheeting—what one witness described as "a huge amount of plastic"—was draped from the ceiling into a trash can. When Geraty encountered the

sheeting more than a week later while walking through the station's police office, the sheeting had become dislodged from the trash can and found its way onto the floor. Geraty tripped on the sheeting, sustained injuries, and ultimately filed this lawsuit. Additional background information related to the accident itself is set out in the Court's March 16, 2009, memorandum opinion and order [204], denying Metra's summary judgment motion on Geraty's claim.

To guard against the possibility that Metra is found liable, Metra filed a third-party complaint [35] pursuant to the Illinois Joint Tortfeasors Contribution Act (740 ILCS 100/0.01 *et seq.*) (the "Act"), seeking contribution from several third-party defendants. The Act allows a would-be tortfeasor to establish a right of contribution even before it is established that the person is, in fact, a tortfeasor. Therefore, even though Metra denies that it is liable for Geraty's injuries, Metra alleges that the third-party defendants helped cause Geraty's injuries when they breached "legal duties arising out of their ownership, control, management, possession and maintenance of the facilities located at One Prudential Plaza in Chicago, Illinois * * *." Third Party Compl. ¶ 13. The One Prudential Building sits above the underground Metra station police office. According to Metra, Able Engineering negligently put up the plastic sheeting on which Geraty tripped (*id.* ¶¶ 35, 38, 50).

## II. Facts

The Court takes the relevant facts primarily from the parties' respective Local Rule ("L.R.") 56.1 statements: Able Engineering's Statement of Facts ("Able SOF") [213-5], Metra's Response to Able Engineering's Statement of Facts ("Metra Resp. SOF") [223], Metra's Statement of Additional Facts ("Metra SOAF") [224], and Able's Response to Metra's Statement of Additional Facts ("Able Resp. SOAF") [235].[1] Note 1, *supra*, incants important guidance for

---

[1] L.R. 56.1 requires that statements of fact contain allegations of material fact, and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at

2

litigants regarding L.R. 56.1 fact statements. Litigants often founder upon L.R. 56.1's at-times perilous (though always prominent and spotlighted) shoals, and that is why the Court includes roughly identical information in each summary judgment opinion. In this case, however, the Court must re-emphasize two points in particular. It is improper for a party to cite to an earlier summary judgment opinion when it was not a party to the motion, or to another party's prior L.R. 56.1 fact statement, in support of a factual proposition. Fact statements must refer to documents that represent admissible record *evidence*. Because there were not many factual disputes in this case, the non-compliance produced few difficulties and did not undermine either party's case—but that was good luck rather than foreordination.

Onto the facts themselves: Roughly one week before Geraty's workplace accident, a leak appeared in the ceiling of the police office at Millennium Station. Metra Resp. SOF ¶¶ 1-3. When the leak appeared, Michael McCray ("McCray"), an engineering supervisor for Metra, contacted security at the Prudential Building, the apparent source of the leak. Metra Resp. SOF ¶ 4. Several people responded, including staff from Able Engineering, the Prudential Building's engineering company. Metra Resp. SOF ¶ 5. Others were there, too, including McCray and a representative of Shorenstein Company LLC ("Shorenstein"). (In the Third-Party Complaint,

---

583-85 (N.D. Ill. 2000). The Seventh Circuit teaches that a district court has broad discretion to require strict compliance with L.R. 56.1. See, *e.g.*, *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Where a party has offered a legal conclusion or a statement of fact without offering proper evidentiary support, the Court will not consider the statement. See, *e.g.*, *Malec*, 191 F.R.D. at 583. Additionally, where a party improperly denies a statement of fact by failing to provide adequate or proper record support for the denial, the Court deems admitted that statement of fact. See L.R. 56.1(a), (b)(3)(B); see also *Malec*, 191 F.R.D. at 584. The requirements for a response under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000). In addition, the Court disregards any additional statements of fact contained in a party's response brief but not in its L.R. 56.1(b)(3)(B) statement of additional facts. See, *e.g.*, *Malec*, 191 F.R.D. at 584 (citing *Midwest Imports*, 71 F.3d at 1317).

Metra says that Shorenstein owns and controls the Prudential Building, but the parties have not introduced other facts related to Shorenstein.)

Plastic sheeting was hung from the ceiling of the Metra police office. The parties agree that it was "possible" that one of the workers from Able Engineering hung the plastic. More important, however, the only admissible record evidence indicates that the plastic was put up by Louis Gutierrez ("Gutierrez"), an employee of Able Engineering. See Gutierrez Dep. at 8 (employee of Able Engineering); *id.* at 23 ("I believe it was me [sic] that put [the plastic] up in the ceiling."). After the plastic was installed, McCray, Metra's engineering supervisor, never came back to the police office until after Geraty's accident. The matter "completely slipped his mind." Metra Resp. SOF ¶¶ 8-9.

Gutierrez says that he asked McCray to call Able Engineering when the ceiling stopped dripping.[2] See Gutierrez Dep. at 29-33. Although McCray did not remember being asked to make such a call, he acknowledged that this could have occurred, at least as an epistemological matter. Metra Resp. SOF ¶ 15. During his deposition, McCray stated, "[I]t could have happened, sure." *Id.* However, Able does not point to any indication that McCray ever acknowledged, assented to, or even heard what Gutierrez said.

The parties agree that the Metra police station is a "secured facility:" the workers from Able Engineering could not get into the facility without an escort from someone from Metra. Metra Resp. SOF ¶¶ 13-14. The day after Gutierrez hung the plastic, Mike Woulfe, an Able Engineering engineer, tried unsuccessfully to find McCray—Woulfe knocked on the door of the police station several times and received no response. Metra Resp. SOF ¶ 16. Woulfe

---

[2] According to Metra's Statement of Additional Facts, "Nobody from * * * [the] Able Engineering crew ever asked Mr. McCray * * * to contact Able when the leak stopped." Metra SOAF ¶ 12. However, Metra cites for this statement only McCray's equivocal deposition testimony. McCray testified that he did not recall being asked to call Able although he acknowledged that "it could have happened." McCray Dep. at 50, 64.

4

subsequently went to the information desk in the Metra station to ask for McCray, which was his normal way of contacting McCray, but that effort proved unsuccessful as well. Metra Resp. SOF ¶¶ 17-18. Metra does not dispute that Woulfe was unable to gain entry, nor does Metra dispute that McCray never called to have the sheeting removed until after Geraty was injured. Metra Resp. SOF ¶ 21. But Able Engineering does not dispute that people other than McCray could have provided an escort to Able Engineering's workers. Able Resp. SOAF ¶ 9 And the record indicates that Woulfe was looking for McCray rather than attempting to gain access to the site of the leak. The parties do agree that, after looking for McCray on the day after Gutierrez put up the plastic, Woulfe made no further attempts to find McCray. Able Resp. SOAF ¶¶ 6, 14. The parties dispute, however, whether it was the typical practice between Able Engineering and Metra for the former to wait for the latter to call before attempting to follow-up on a leak. Compare Metra SOAF ¶ 11, with Able Resp. SOAF ¶ 11.

### III. Legal Standard on Summary Judgment

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue

for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## IV. Analysis

The first question is what law applies to an action for contribution in a FELA case. In a FELA case, the right to contribution among multiple tortfeasors is governed by state law.[3] The Illinois Joint Tortfeasors Contribution Act (the "Contribution Act") provides that where two or more people "are subject to liability in tort arising out of the same injury * * * there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a). The Act establishes the *right* of contribution, so it applies even where a judgment has not been entered against any of the potential tortfeasors. *Id.*

---

[3] Critically, however, the effect of a settlement on a FELA plaintiff's ultimate recoverable amount is a creature of federal law. See *Schadel v. Iowa Interstate R.R., Ltd.*, 381 F.3d 671, 676-78 (7th Cir. 2004) (*pro tanto* reduction in overall amount owed to a plaintiff). The Seventh Circuit left open the interesting question of whether or not a settling defendant could remain liable in a separate contribution action. See *id.* at 678-79.

Able Engineering argues that Metra cannot establish two out of the three pillars of a successful tort claim. It is hornbook law that a plaintiff must prove three components to make out a successful tort claim: (1) that the defendant owed a duty to the plaintiff, (2) that the defendant breached the duty, and (3) that the breach proximately caused injury to the plaintiff. *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007); *Chandler v. Ill. Cent. R.R. Co.*, 798 N.E.2d 724, 728 (Ill. 2003). Able Engineering argues that it cannot be held liable under the Contribution Act because it did not have a duty to remove the plastic sheeting. Able Mem. at 5-8. Able Engineering also argues that even if it did owe a duty to come back and remove the plastic, the breach was not the proximate cause of Geraty's injuries. *Id*. at 8-10. (In the main, however, Able Engineering's causation arguments more obviously speak to the question of breach.)

### A. Duty

The existence of a legal duty is a question of law. *Iseberg*, 879 N.E.2d at 284. In order to determine if one person owed a legal duty to another, Illinois courts consider (1) the reasonable foreseeability that the defendant's conduct may injure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such an injury, and (4) the consequences of placing that burden on the defendant. *Adams v. N. Ill. Gas Co.*, 809 N.E.2d 1248, 1257 (Ill. 2004). The Court need not blaze trails in applying that test to these facts, for it is well established that adjoining land owners owe duties to one another: a landowner must not use his property in a way that damages his neighbor's property. *City of Quincy v. Jones*, 76 Ill. 231 (1875) (citing *Nevins v. Peoria*, 41 Ill. 507 (1866)); see also *Justice v. CSX Transp., Inc.*, 908 F.2d 119, 123 (7th Cir. 1990) (Posner, J.) (stating that the "fundamental" principle "undergirds the law of nuisance, the doctrine of *Rylands v. Fletcher*, the blasting cases, [and] much of trespass law * * *"). Notably, the historic case of *Jacksonville, N.W. & S.E.R. Co. v. Cox*, 91 Ill.

500 (1879), teaches that when one landowner wrongfully causes water to be diverted onto the land of its neighbor it is "incumbent * * * upon the [former] to provide egress for the water" and the landowner can be held liable where its "supposed remedy" for the flow of water, which the neighbor allows the landowner to undertake "prove[s] a failure." *Id.* at 504. That fact pattern in *Cox* appears to be directly on point. Able Engineering has not indicated why the Court should depart from longstanding precedent from the Illinois Supreme Court, nor from fundamental principles of tort law. *Cf.* also *Chandler v. Larson*, 500 N.E.2d 584, 587-88 (Ill. App. Ct. 1986) (liability even for natural conditions in an urban environment).

Thus, Shorenstein, as an adjoining landowner, owed a duty not to use its land in a way that caused damage to its neighbor, in this case Metra. The lesson of *Cox* is that Shorenstein could be held liable where its "supposed remedy" "proved a failure" by causing injury to a third person. And in this case Able Engineering was Shorenstein's agent. First principles of principal-agent law teach that "principals [like Shorenstein] and agents [like Able Engineering] are jointly and severally liable for tortious conduct." *Fortech, L.L.C. v. R.W. Dunteman Co., Inc.*, 852 N.E.2d 451, 456 (Ill. App. Ct. 2006).

In sum, the argument that Able Engineering owed no duty ignores its agency relationship with Shorenstein and longstanding legal principles. Able Engineering has not presented authorities that teach, as a matter of law, that it owed no legal duty. Therefore, summary judgment cannot be granted based on Able Engineering's duty argument.

### B. Causation (and Breach)

Although Able Engineering indicates that its argument is that Metra cannot establish causation, its arguments speak more to the question of breach. In this case, the parties dispute what the customary interactions were like between Able Engineering and Metra. McCray

8

indicated that Able Engineering would typically make repairs to ceiling tiles without seeking permission from Metra and that Able Engineering, "surprisingly," did not announce that it would be coming to make repairs. McCray Dep. at 64. In contrast Michael Woulfe testified that Metra would have been responsible for either taking down the plastic or calling Able Engineering to have the plastic taken down. Woulfe Dep. at 62. The divergent stories about the expectations of the parties preclude a determination at summary judgment as to whether Able Engineering breached a duty, because customary interactions bear on whether a person has breached a legal duty. *Dezort v. Vill. of Hinsdale*, 342 N.E.2d 468, 472 (Ill. App. Ct. 1976) (although custom is not conclusive "it suggests a body of knowledge of which the defendant should be aware"); Restatement (Second) of Torts § 295A & cmt. b (1965) ("Any such custom of the community in general, or of other persons under like circumstances, is *always* a factor to be taken into account in determining whether the actor has been negligent.") (emphasis added); see also *Qureshi v. Ahmed*, 916 N.E.2d 1153, 1159 (Ill. App. Ct. 2009) (foreseeability's focus is on what actors knew or should have known). Even were the factual picture not marked by pointed ambiguities, the he-said/she-said nature of the dispute regarding the customary interactions between the parties means that summary judgment is not appropriate. *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001).

To the extent that Able Engineering has argued that causation itself is too attenuated in this case, a point which is touched on but not fleshed out in extensive detail, the Court need not say more and instead refers Able to the Court's discussion of causation in the March 16, 2009 Memorandum and Order [204]. "[A] trier of fact could find that the critical event for purposes of establishing the element of foreseeability did not occur when the plastic fell out of the garbage can, but rather when the plastic was draped from the ceiling in the first place." *Id.* at 13.

## V. Conclusion

For the foregoing reasons, Third-Party Defendant Able Engineering's motion for summary judgment [213] is denied.

Dated: March 29, 2010

Robert M. Dow, Jr.
United States District Judge